UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| VALERIE VIZGAUDIS-GOMEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED; WELLPATH LLC; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:26-CV-02403 WBS JDP<br><br><u>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND</u> |

----oo0oo----

Plaintiff Valerie Vizgaudis-Gomez moves to remand this putative class action to the Superior Court of the State of California, County of Sacramento (Case No. 26CV011196). (Mot. to Remand (Docket No. 8).) Plaintiff alleges six California state wage and hour law causes of action against her former employers, California Forensic Medical Group, Incorporated ("CFMG") and Wellpath LLC ("Wellpath"), and "DOES 1 through 50," yet to be

identified. (Notice of Removal ("Notice") at 2-3 (Docket No. 1).) The claims arise from plaintiff's employment as a registered nurse at the Placer County Auburn Jail from January 28, 2024 to February 3, 2026. (Mot. at 1; Notice at 5.)

In support of removal, defendants argue that plaintiff's state law claims are properly "re-characterized" as a federal claim arising under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("LMRA § 301"). (Notice at 6.) Specifically, defendants contend that plaintiff's state law claims are "completely pre-empted" by LMRA § 301 because plaintiff was "subject to the [collective bargaining agreement, 'CBA'] between CFMG and American Federation of State, County and Municipal Employees, Council 57, ('AFSCME' or the 'union'), her union representative." (Notice at 2-3.)

## I. Legal Standard

A defendant may remove an action filed in state court if that action originally could have been filed in federal court, such as under federal-question jurisdiction. 28 U.S.C. § 1441(a). Under the "well-pleaded complaint rule," federal-question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998).

However, "[a] resulting corollary to the well-pleaded complaint rule, known as the complete preemption doctrine, provides that 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" Toumajian v. Frailey, 135

F.3d 648 (9th Cir. 1998) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)). Where this occurs, "any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1243-44 (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 24 (1983). The Supreme Court has clarified that the "preemptive force of [LMRA § 301] is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Franchise Tax Bd., 463 U.S. at 23.

Nonetheless, "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." Cal. ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)). This presumption against removal applies even where, as here, defendants argue for complete preemption. See Moore-Thomas, 553 F.3d 1241, 1244 (9th Cir. 2009).

II. Complete Preemption of Plaintiff's State Law Claims

Defendants argue that plaintiff's entire complaint falls within the CBA and, accordingly, arises under LMRA § 301. (Notice at 2.)

To determine whether LMRA § 301 completely preempts any of these claims, the court must apply the two-pronged test enunciated in Burnside v. Kiewit Pac. Corp. 491 F.3d 1053, 1060-61 (9th Cir. 2007). In doing so, the court may look "beyond the pleadings," including by consulting defendants' notice of removal

and its attachments. Renteria-Hinojosa v. Sunsweet Growers, Inc., 150 F.4th 1076 (9th Cir. 2025) (citing Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1041 (9th Cir. 2003).

First, the court must evaluate whether the claim "seeks purely to "vindicate a right or duty created by the CBA itself," rather than by state law. Ulloa v. Blackstone Consulting, Inc., No. 5:24-CV-01134-HDV-SKX, 2025 WL 306380 (C.D. Cal. Jan. 27, 2025) (quoting Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union, 23 F.4th 836, 842 (9th Cir. 2022)). Second, if the CBA is not the right's sole source, the court assesses whether the claim "nonetheless requires interpretation of a CBA." Schurke, 898 F.3d 904, 921 (9th Cir. 2018).

Here, plaintiff brings six claims in total, each arising under California state law and wholly without reference to the CBA itself: violations relating to (1) failure to pay wages; (2) failure to provide meal periods; (3) failure to permit rest periods; (4) failure to provide accurate itemized wage statements; (5) failure to pay all wages due during employment and upon separation of employment; and (6) unfair and unlawful business practices. (Notice at 2.) If any claims are "'either grounded in the provisions of the [CBA] or requires interpretation of it,' that claim arises under federal law, even if the plaintiff does not 'allege[ ] a breach of [the CBA].'" Renteria-Hinojosa, 150 F.4th at 1089 (quoting Burnside, 491 F.3d at 1059).

A. Step One: Rights Existing Solely Under the CBA

At the first Burnside step, the essential question is whether the CBA is "the only source" for the right the plaintiff

seeks to vindicate. Alaska Airlines Inc. v. Schurke, 898 F.3d 904, 921 (9th Cir. 2018). Here, defendants argue that plaintiff's unpaid overtime cause of action, brought under California Labor Code § 510, arises solely from the CBA and is therefore completely pre-empted. (Docket No. 10 at 9-14.) For support, defendants marshal California Labor Code § 514, which forecloses § 510 claims only for CBAs that comply with all its substantive provisions. Cal. Lab. Code §§ 510(a)(2), 514.

A § 514-compliant CBA (1) "expressly provides for the wages, hours of work, and working conditions of the employees"; (2) "provides premium wage rates for all overtime hours worked"; and (3) provides "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.

For § 514 to apply, the CBA must encompass the entire class period. See Tjoa v. THC - Orange County, LLC, No. 8:25-CV-02366-FWS-JDE, 2026 WL 458233, at *3 (C.D. Cal. Feb. 17, 2026). In Tjoa, an overtime wages claim did not "exist[] solely because of the CBA" where the class period began four years before the complaint's filing and "several months of [p]laintiff's overtime wages claim" arose under California law. Id. (quoting Curtis, 913 F.3d at 1154). Similarly, in Ulloa, a claim did not arise exclusively "out of a CBA because for [an] earlier damages period the right arose out of California wage and hour law. Section 514 cannot exempt the application of California law for this earlier period since there was no qualifying CBA to nullify the applicability of Section 510(a)." 2025 WL 306380, at *4.

Here, the same applies. Plaintiff's alleged class

period began more than two years before the CBA went into effect. (Mot. at 1.) Accordingly, defendants' reliance on the § 514 exemption is incapable of curing the several pre-CBA months where plaintiff's cause of action arose from state law.

In fact, as defendants concede, the CBA does not even cover the named plaintiff's entire employment term. (Docket No. 10 at 9-10.) Defendants argue that § 514 is satisfied where a CBA covers a majority -- here, 80 percent -- of an employment term. (Id.) But they cite no authority for that proposition. Moreover, it is impossible for the rights alleged in the § 510 claim to "exist solely" because of the CBA when the CBA does not fully cover the relevant employment term.

Defendants do not address any of plaintiff's other claims under the first step of Burnside. Accordingly, the court proceeds to step two.

B. Step Two: Substantial Dependence on Interpretation of CBA

Burnside's second step requires determining whether adjudicating plaintiff's claims substantially depends on interpreting the CBA. Cramer v. Consol. Freightways Inc., 255 F.3d 683, 691 (9th Cir. 2001). A defendant "must explain why interpretation, as opposed to mere reference to the CBA, is necessary." Johnson v. S.F. Health Care & Rehab Inc., No. 22-CV-01982-JSC, 2022 WL 2789809, at *6 (N.D. Cal. July 15, 2022) (quoting Wilson-Davis v. SSP Am., Inc., 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020)). A "hypothetical connection" or "creative linkage" between the state law claim and the CBA is "insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility." Cramer, 255 F.3d at

691. Moreover, "[t]he primary point of reference in the preemption analysis is . . . the plaintiff's pleading." Schurke, 898 F.3d at 923; see Humble v. Boeing Co., 305 F.3d 1004, 1008 (9th Cir. 2002).

1. Overtime Claim

Plaintiff alleges that defendants' failure to pay "overtime and double-time compensation" for qualifying hours worked violates California Labor Code §§ 510 and 1198. (Compl. at 9.) Defendants argue that plaintiff's overtime claim requires the court to interpret "multiple interlocking" CBA provisions. (Docket No. 10 at 16.) Plaintiff denies that any CBA term is in dispute. (Docket No. 11 at 9.) The court agrees with plaintiff.

The Ninth Circuit has repeatedly emphasized that "the simple need to refer to bargained-for wage rates in computing [a] penalty ... is [not] enough to warrant preemption." Burnside, 491 F.3d at 1060 (quoting Livadas, 512 U.S. at 125). Rather, a defendant must demonstrate an actively disputed interpretive issue that would require a reviewing court to do something more than merely look to, consult, or apply a CBA's bargained-for wage rates. See id. For example, in McKinley v. Sw. Airlines Co., an overtime claim substantially depended on interpreting a CBA because the defendant allegedly failed to "factor required remuneration into [p]laintiff's regular rate of pay before applying overtime multipliers." No. CV 15-02939-AB JPRX, 2015 WL 2431644, at *5 (C.D. Cal. May 19, 2015), aff'd, 680 F. App'x 522 (9th Cir. 2017).

Here, defendants' argument hinges on "interlocking" CBA provisions governing overtime wage calculations. (Docket No. 10

at 15-16.) Specifically, defendants argue that the court would need to interpret CBA provisions to determine what constitutes plaintiff's "regularly scheduled" work, referring to multiple CBA compensation formulas and provisions. However, as defendants acknowledge, plaintiff worked a "3/12 alternative workweek schedule," which corresponds to CBA Article 14.3(c), and provides for "time-and-a-half for all hours in excess of 40 in a workweek" in excess of the "regularly scheduled 3/12 schedule or for hours 37-40." (Docket No. 10 at 15.) CBA Article 14.4 separately "provides double time for all hours in excess of 12 in a consecutive 24-hour period." (Id.) Defendants argue that plaintiff's overtime worked beyond her 3/12 schedule is not necessarily controlled by the language of CBA Article 14.3(c), and other CBA provisions may, too, be relevant to determine the amount of overtime owed. (Id.) However, this "hypothetical connection" is not enough. Cramer, 255 F.3d at 691.

The possibility that other CBA provisions may be necessary to consult while adjudicating plaintiff's claim -- made easier by factual development not possible at the pleading stage -- is not enough to show that plaintiff's claim substantially depends on CBA interpretation. It is, accordingly, not apparent to the court why interpretation rather than mere consultation and application of these CBA provisions, is necessary, especially given that defendants cannot show plaintiff's competing interpretation of any CBA term. (See Docket No. 10 at 15.)

Indeed, defendants have not shown that any particular provision is in dispute -- i.e., how plaintiff's competing interpretation of a given CBA term or provision would result in a

different outcome. See Renteria-Hinjosa 2023 WL 6519308, at 6 (finding an overtime claim is not substantially dependent where defendant failed "to identify any dispute over the meaning of [unique CBA] terms, how interpretation is necessary to adjudicating [p]laintiff's claims, or how a particular interpretation would affect the outcome of [p]laintiff's claims."). In fact, here, plaintiff contends that no term is in dispute and that the operative CBA language at Articles 14 and 18 can be interpreted on their face. (Docket No. 11 at 9.)

Defendants' reference to various "differentials" and "premiums" that would need to be calculated for plaintiff's overtime claim is similarly inapposite given the nature of plaintiff's claim. (See Docket No. 10 at 16.) Plaintiff's claim does not allege erroneous calculation; rather, it concerns the deprivation of overtime pay itself. (Compl. at 9.) Unlike McKinley, plaintiff here is not challenging any aspect of how overtime is calculated in the CBA, which formula is used, nor the application or omission of certain differentials, premiums, or the like. 2015 WL 2431644, at *4. Rather, the claim here turns on the alleged failure to provide applicable overtime compensation at all. (See Compl. at 8-9.) Indeed, plaintiff states that no provision is in dispute: "Articles 14 and 18 [of the CBA] are unambiguous on their fact . . . [d]efendants have not identified a genuine dispute over what that language means." (Docket No. 11 at 9.)

In such instances, courts have found that the need to consult wage tables cannot suffice to completely preempt an otherwise valid state law claim. For example, in Bryant v.

Catholic Healthcare W., the claims were "not based on a dispute over how to calculate their pay rate under the CBA, but on [d]efendant's alleged failure to pay them any regular or overtime pay at all for certain time worked." No. CV 11-07490 DDP JCGX, 2012 WL 3425649 at *3 (C.D. Cal. Aug.13, 2012) (emphasis added). Similarly, in Renteria-Hinjosa, where "[d]efendant forced [plaintiff] to work through . . . meal breaks while she was clocked out, which led to not receiving overtime," such claims were based on a failure to pay, not the method of calculation. No. 2:23-CV-01413-DJC-DB, 2023 WL 6519308 (E.D. Cal. Oct. 5, 2023) (Calabretta, J.), aff'd sub nom. Renteria-Hinojosa v. Sunsweet Growers, Inc., 150 F.4th 1076 (9th Cir. 2025).

Plaintiff's overtime claim is similarly based on deprivation, not calculation. Defendants allegedly required plaintiff and class members to "work shifts outside of their regularly scheduled alternative workweek schedule" and "to clock out for meal periods that [they] were routinely required to work through." (Compl. at 6.) Consequently, like in Renteria-Hinjosa, defendants' "host of . . . terms that relate to the calculation of an employee's wages and overtime" is inapposite. 2023 WL 6519308, at *6.

Defendants' invocation of these related provisions and terms does not, *ipso facto*, place them in dispute. Accordingly, plaintiff's overtime claim is not preempted under LMRA § 301.

2. Meal Periods Claim

Plaintiffs allege that defendants violated California Labor Code §§ 226.7, 512, and IWC Wage Order § 11 because they failed to provide "compliant meal periods for every 5 hours

worked" and "failed to pay [p]laintiff and class members meal period premiums for missed, late, and/or short meal periods." (Compl. at 10.) Defendants argue that plaintiff's claim substantially depends on the CBA's terms. (Docket No. 10 at 16-17.) Defendants invoke terms they argue are "unique to the bargaining relationship," including "Patient Care Waiver Form;" revocation of waiver; mutual consent for waivers of certain meal periods; and the applicable premium pay rate for violations. (Docket No. 10 at 17.)

However, state law claims for failure to provide certain rights -- such as rest and meal periods -- are nonwaivable "absent an applicable statutory exemption." Harris v. Ghirardelli Chocolate Co., No. 25-CV-11106-JST, 2026 WL 2138561, at *5 (N.D. Cal. July 24, 2026) (emphasis added) (quoting Valles v. Ivy Hill Corp., 410 F.3d 1071, 1081 (9th Cir. 2005)). Accordingly, CBA language concerning a Patient Care Waiver Form -- or revocation of the same -- cannot waive the "nonnegotiable" state right to meal periods beyond what is provided in § 512 where plaintiff's claim is wholly grounded in state law and no exemption applies. See Valles, 410 F.3d at 1082; Fite v. Sysco Sacramento, Inc., No. 2:21-CV-01633-DJC-AC, 2025 WL 1192659, at *4 (E.D. Cal. Apr. 24, 2025) (Calabretta, J.) (finding a CBA's provisions "entitl[ing] employees to meal periods" to be "of no import"). Here, because plaintiff has brought a meal period claim under state law and no statutory exemption applies, the argument that the court would need to interpret CBA-specific waiver language is unavailing.

Defendants also have not identified an "active dispute"

pertaining to any CBA provision on meal periods. Schurke, 898 F.3d at 921. Indeed, plaintiff's claim is grounded in defendants' failure to provide meal periods, not whether such rights were "waived," nor how compensation for alleged violations would be calculated. (Compl. at 9-10.) Accordingly, none of defendants' marshaled CBA provisions concerning a "Patient Care Waiver Form" or its revocation would require interpretation in the sense Burnside uses that term. (Docket No. 10 at 17.) Plaintiff's claim for failure to provide meal periods under state law is not substantially dependent on interpretation of the CBA. Accordingly, it is not preempted by LMRA § 301.

3. Rest Periods Claim

Plaintiffs allege that defendants failed to provide rest periods under California Labor Code § 226.7 and IWC Wage Order § 12. Defendants again argue that plaintiff's claim is substantially dependent on interpretation of the CBA and thereby completely preempted by LMRA § 301. (Compl. at 11.) Defendants contend that "stark" textual differences between the CBA and state law "requires the [c]ourt to interpret the scope of the CBA's rest period entitlement and determine whether it supplants or supplements the statutory standard." (Docket No. 10 at 18.)

As a matter of law, however, this claim is not preempted. "California's rest break requirements are a 'minimum labor standard' that neither an employee nor their collective bargaining representative can waive." Renteria-Hinojosa, 150 F.4th at 1090 (citations omitted) (considering a similar § 226.7

claim).[1] The employer in Renteria-Hinojosa had to "provide rest breaks in accordance with state law, regardless of whether the CBA gave [the employer] . . . discretion to modify rest breaks." (Id. at 1090-91.)

Lower courts of this circuit have treated Renteria-Hinojosa's holding as foreclosing similar arguments concerning rest period violation claims. In Charles Rivkin v. 117 Prods., LLC et al., a "claim for failure to provide rest periods in violation of California Labor Code Sections 226.7 and applicable IWC Wage Orders" was not preempted by two CBAs because "rest break requirements" are an unwaivable minimum labor standard, irrespective of the terms of the CBA. No. 2:26-CV-07097-SVW-CTS, 2026 WL 2742061, at *5 (C.D. Cal. Sept. 14, 2026). Similarly, in Leiva v. K.W. Emerson, Inc., the court found that "[a]s to the second preemption step, the Ninth Circuit has found the terms of a CBA on rest breaks are 'irrelevant' to a state law claim alleging rest break violations." No. 2:25-CV-01956-CSK, 2025 WL 3754128, at *6 (E.D. Cal. Dec. 29, 2025) (Kim, J.) (quoting Renteria-Hinojosa, 150 F.4th at 1090.)

This case is no different. Despite defendants' argument that various CBA-specific terms require interpretation, recent and controlling Ninth Circuit case law is clear. (Docket No. 10 at 17-18.) Plaintiff's claim for failure to provide rest periods under state law is not dependent on interpreting the CBA

---

[1] Neither party acknowledged the recent, controlling Ninth Circuit language from Renteria-Hinojosa concerning how rest period claims cannot be foreclosed by LMRA § 301 because they provide minimum labor standards that cannot be waived or modified by CBAs. 150 F.4th at 1090.

and, therefore, not preempted by LMRA § 301.

4. Derivative Claims

Defendant argues that plaintiff's remaining claims for inaccurate wage statements, failure to pay wages due at separation, and unfair competition are also preempted because they are derivative of the claims discussed above. (Notice at 9-10.) However, the court has held that the underlying claims are not preempted. (See Sections I-II, supra.) Accordingly, defendants' arguments regarding these claims also fail.

III. Conclusion

Because plaintiff's claims are not preempted by LMRA § 301 and defendants have not provided any other basis for federal subject-matter jurisdiction, the court finds that it lacks jurisdiction and must remand this action to state court.

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Docket No. 8) be, and the same thereby is, GRANTED. This action is hereby REMANDED to the Superior Court of the State of California, in and for the County of Sacramento, Case No. 26CV011196.

Dated: September 30, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE